**Opinion issued August 27, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00370-CV

————————————

**REPUBLIC PETROLEUM LLC AND**

**REPUBLIC PETROLEUM PARTNERS, LP, Appellants**

**V.**

**DYNAMIC OFFSHORE RESOURCES NS LLC**
**AND W&T OFFSHORE INC., Appellees**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-80561**

---

## O P I N I O N

Republic Petroleum LLC, an offshore gas producer, entered into a

Production Handling Agreement (PHA) with Dynamic Offshore Resources NS

LLC and W&T Offshore Inc. (the platform owners) to process natural gas from an

offshore well. In this suit, Republic claimed that the platform owners breached their agreement in the PHA to maintain and repair the platform's processing equipment and charged excessive amounts for the repairs that were made. The platform owners responded by contending that Republic LLC lacked standing and capacity to seek damages for these breaches because (1) it had assigned its working interest in the well before the claimed breaches occurred, and (2) even if it could sue on behalf of the company in which it had an interest, it did not sue on behalf of the other working interest owners.

The parties tried their claims and defenses to a jury. The jury found that the platform owners did not comply with the PHA and further found that $741,235 in damages would fairly and reasonably compensate Republic L.L.C. for the repair and other costs that it had incurred as a result of the platform owners' breaches of the PHA. Following the verdict, the trial court held a bench trial on the issue of attorney's fees. It then entered a final judgment on the verdict and its finding of reasonable and necessary attorney's fees.

Post-trial, the platform owners urged their standing and capacity arguments in a motion for judgment notwithstanding the verdict (jnov), motion for remittitur, and motion to modify the judgment. The trial court initially denied the motions, but on reconsideration signed a modified final judgment that reduced the jury and

attorney's fee awards to correspond to the fractional interest in the well's production that Republic LLC, through Republic LP, owned.

On appeal, Republic LLC challenges the modified judgment. The platform owners cross-appeal, challenging the trial court's denial of their motion for directed verdict, motion for jnov, motion for new trial and motion for remittitur, contending that Republic LLC should take nothing. Because we conclude that Republic had standing to sue the platform owners, and its capacity to prosecute the suit was a contested issue at trial that the jury impliedly found against the platform owners, we conclude that the trial court erred in reducing the jury's verdict to Republic LP's proportional interest in the well's production. We reverse the amended judgment, and we remand with instructions to reinstate the jury's verdict and to reconsider attorney's fees in light of this opinion.

## Background

Republic LLC developed a producing well, named the Satellite Well, in the Gulf of Mexico near High Island, Texas. In November 2007, Republic LLC entered into the PHA with the platform owners for processing the natural gas that the well produced. The PHA governed the processing and handling of the natural gas and condensate produced from the well and delivered by Republic LLC through a 6-mile-long seafloor pipeline to an on-shore host facility. Under the PHA, Republic LLC paid the platform owners a monthly volumetric fee for

processing gas in exchange for, among other things, the platform owners' routine maintenance and repair of the processing equipment. Republic Petroleum LLC was the signatory of the PHA and the designated operator of the producing well.

In addition, Republic LLC introduced an Offshore Operating Agreement into evidence. In that agreement, Republic LLC was the designated representative of the non-operating working interest participants in the well and was authorized to act on behalf of all of the working interest owners. That agreement authorized Republic LLC to negotiate and execute the PHA with the platform owners.

In October 2008, Republic LLC assigned its working interest in the well to Republic Petroleum Partners LP; at that point, although Republic LLC continued to be the operator under the PHA, it was no longer a working interest owner. Republic LLC continued to be the operator under the operating agreement until July 2010.

The evidence at trial showed that the equipment on the platform was old and in disrepair, and that the platform owners overcharged Republic LLC for repairs to the platform's processing equipment. By the summer of 2008, the separator equipment on the platform did not work properly. Shut-ins and downtime occurred frequently, halting production. The platform owners gave their 90-day notice of intent to terminate the contract in the spring of 2009, and they did not perform any further maintenance on the equipment from that point forward.

Republic LLC sued the platform owners for breach of the PHA, seeking reimbursement for overcharges and excessive billings during the period that it was the designated operator acting on behalf of the working interest owners. The jury heard testimony from Scott Stanford, president of Republic Petroleum Partners, LP and president and managing partner of Republic Petroleum, LLC. Republic LLC is the general partner authorized to act on behalf of Republic LP. Republic LLC also introduced into evidence records of the invoices and the payments that it had made to the platform owners relevant to the activities under the PHA. Stanford also testified that Republic LLC was the well's designated operator for federal reporting and compliance purposes.

The platform owners challenged this evidence with evidence regarding Republic LLC's lack of working interest ownership, and at a minimum, they sought to limit the damages to Republic LP's working interest share.

The jury found that the platform owners had breached the PHA, and further found that Republic LLC was entitled to recover $741,235 in compensatory damages for "repairs" and "costs paid by Republic LLC." The jury found that Republic LLC did not sustain any damages under the PHA for loss of production, or for damage to the well reservoir or a platform reconnection.

The trial court held a post-verdict bench trial on Republic LLC's request for attorney's fees. It found that Republic LLC had incurred $665,640.37 in

reasonable and necessary fees. It entered a final judgment on the jury's verdict and its fee finding.

The platform owners moved for judgment notwithstanding the verdict, for new trial, for remittitur, and to modify the judgment, contending that Republic LLC lacked standing or capacity to bring suit under the PHA, claiming that Republic LLC had transferred its working interest in the well before the platform owners had breached the agreement. Alternatively, the platform owners contended that Republic LLC was limited to the percentage of damages that corresponded to the Republic entities' working interest in the well, because it had not timely identified itself as acting in a representative capacity on behalf of the working interest owners. Although Republic LLC is the designated operator of the producing well under the PHA, the platform owners pointed to evidence admitted at trial establishing that Republic LLC had transferred its working interest in the well to Republic LP and two other owners.

The trial court denied the platform owners' motions for jnov, new trial, and remittitur but granted their motion to modify the judgment. The modified final judgment reduced the damages to 23.75% of the jury award and reduced the fee award to 26.29% of the amount awarded at the bench trial. The damages reduction was proportionate to the Republic entities' existing working interest in the well,

6

and the reduction of the attorney's-fee award appears based on the same consideration.

**Discussion**

*Standard of review and preservation of error*

The platform owners contend that we should review Republic LLC's challenges to the trial court's ruling modifying the judgment for an abuse of discretion, rather than de novo. But it is not the title of the post-trial motion that governs the standard of review; rather, it is the relief requested and the substance of the challenge presented. *See Surgitek v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999); *Doctor v. Pardue*, 186 S.W. 3d 4, 16 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). In connection with their motion to modify the judgment, the platform owners (1) challenged the legal and factual sufficiency of the evidence presented and (2) urged modification as a matter of law based on Republic LLC's alleged limited capacity to bring suit. Their motion to modify the judgment was, in substance, a motion to "disregard a jury's answer to a vital fact issue." Thus, we review their motion to disregard the jury's findings using a legal sufficiency standard, and their arguments regarding a legal impediment to recovery as questions of law de novo. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

The platform owners further suggest that Republic LLC has waived its challenge to the modified judgment because its appellate brief does not assail every ground the platform owners asserted as a basis for requesting it. Each of the platform owners' grounds, however, is a variation of their overarching contention that Republic LLC lacks standing and capacity, and that it could not sue for 100% of the costs that it incurred without the participation of the working interest owners. The Republic entities' brief addresses the arguments regarding capacity and standing, and discusses whether the conflicting evidence regarding capacity is both legally and factually sufficient to support the jury's verdict. The platform owner's waiver argument is without merit.

Republic LLC, for its part, contends that the platform owners have not properly preserved any challenge to the amount of damages awarded by the jury, noting that the Texas Rules of Civil Procedure provide that such challenges must be brought by a motion for new trial, not a motion to modify the judgment. *See* TEX. R. CIV. P. 324(b)(4); *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 73 (Tex. 2008) (orig. proceeding) (declaring that motions for new trial and motions to modify, correct or reform a judgment are "distinct procedural vehicles"). Republic ignores, however, that the platform owners moved for a new trial and for remittitur, and included the standing and capacity arguments that it raises on appeal, which the trial court denied.

We conclude that the parties have preserved error regarding their challenges to the trial court's modified judgment. We turn to the merits of those arguments.

## I.  Standing

The platform owners claim that Republic LLC lacks standing to sue for a breach of the PHA because it has assigned all of its working interest in the Satellite Well to other entities. In contrast, Republic LLC contends that sufficient evidence supports a finding that it had standing. A party's standing to seek relief is a question of law that we review de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004).

The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). A plaintiff establishes standing to maintain a breach-of-contract action by demonstrating that it has an enforceable interest as a party to the contract, as an assignee of a party, or as a third party beneficiary. *See OAIC Comm'l Assets, L.L.C v. Stonegate Village L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, pet. denied).

Under Texas contract law, an assignor's contractual obligations generally "survive assignment unless the contract expressly provides otherwise or the assignor obtains an express release." *Seagull Energy E&P, Inc. v. Eland Energy*, 207 S.W.3d 342, 345 (Tex. 2006). Following this principle, the Court in *Seagull*

9

*Energy* held that a seller remained liable under an operating agreement because the agreement did not provide that the seller's obligations terminated upon assignment of the agreement, and the operator did not release the seller following the assignment of its working interest. *Id.* at 347. Concomitantly, a party who assigns its interest under a contract has standing to sue for damages that it incurred based on the rights it had prior to the assignment, unless the breaching party's actions caused no damage to the assignor or the assignor right's under the agreement were terminated or otherwise released; liability for the non-assigning party's breach of its obligations do not disappear upon assignment, but remain in place. *See id.*

In this case, the parties did not terminate the agreement upon an assignment. and the agreement does not provide for automatic termination upon assignment. Rather, the PHA expressly requires that the platform owners consent to an assignment, and the agreement allocates responsibility to Republic LLC for the costs incurred until an assignment is approved:

> 15.1 PRODUCER, nor its successors or assigns shall assign, convey, transfer, or hypothecate any of their rights, privileges, duties and/or obligations, in whole or in part, under this Agreement without the prior written consent of [PLATFORM OWNERS], which consent shall not be unreasonably withheld. PRODUCER'S request for consent must be in writing and include the name(s) of the assign(s), pertinent details of the transactions, state the portion of the dedicated handling/processing capacity being conveyed with such interest in the Satellite Well and contain the written agreement by its assignee to be bound by the terms of this Agreement. . . .

15.2 Any assignment of this Agreement by either Party shall be effective only upon at least seven (7) days['] written notice to the other Party. *Each party shall remain responsible for any costs incurred by that Party under the terms of this Agreement prior to the date of notice to the other Party in writing of the assignment of this Agreement and the assignee's acceptance of the terms of this Agreement.*

The record does not contain any written request for consent from Republic LLC to the platform owners or any writing from the platform owners consenting to Republic LLC's assignment of its responsibilities under the PHA to any other entity. The evidence at trial, to the contrary, was that Republic LLC continued in its role after ownership of the working interests took place. The platform owners thus had not released Republic LLC from its obligations under the agreement. The unambiguous, mandatory language of the provision did not allow Republic LLC to transfer its obligations under the PHA without approval; accordingly, its corresponding contractual rights held firm as well. Under the PHA's own terms, Republic LLC is the contracting party to that agreement; neither party adduced evidence of an assignment approved by the platform owners. We hold that Republic has standing to sue the platform owners for breach of the PHA and to seek damages that it incurred as a result of the breach.

## II. Capacity to Sue

The platform owners further contend that Republic LLC cannot directly recover damages under the PHA because it did not own a working interest in the

11

well when Republic LLC filed suit; instead, its assignees owned the working interests at issue. At best, the platform owners argue, Republic LLC was acting in the capacity of a representative on behalf of its assignees, but failed to demonstrate that the assignees had granted it the authority to bring this suit. Republic LLC responds that the jury impliedly found that Republic LLC possessed capacity to sue, and it awarded damages based on the evidence of invoices and other documents demonstrating the amounts Republic LLC paid as a result of the platform owners' breaches of the PHA.

Capacity is a procedural issue addressing the personal qualifications of a party to litigate. *Lovato*, 171 S.W.3d at 848. Unlike a challenge to standing, a challenge to capacity must be raised by verified pleading in the trial court. TEX. R. CIV. P. 93(1)–(2); *see Sixth RMA Partners, LP v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003). The platform owners verified their pleading alleging that Republic LLC lacked the capacity to sue under the PHA, and therefore, complied with this requirement.

"[I]f a verified denial is filed, the issue of the plaintiff's capacity to sue is controverted, and the plaintiff bears the burden of proving at trial that he is entitled to recover in the capacity in which he has filed suit." *Bossier City Chrysler Dodge II, Inc. v. Rauschenberg*, 201 S.W.3d 787, 798–99 (Tex. App.—Waco, pet. granted), *rev'd in part on other grounds*, 238 S.W.3d 376 (Tex. 2007); *see Damian*

*v. Bell Helicopter Textron, Inc.*, 352 S.W.3d 124, 141 (Tex. App.—Fort Worth 2011, pet. denied). The plaintiff thus bears the burden to obtain a jury finding on the issue. But if the questions submitted assume the plaintiff has capacity and the defendant does not object to the absence of any questions, definitions, or instructions on capacity, the defendant waives its right to appellate review of the issue. *Damian*, 352 S.W.3d at 141–42.

The jury charge contained questions that assumed Republic LLC's capacity to sue under the PHA, but it did not contain a question that asked or instructed the jury about Republic LLC's capacity to bring suit. The platform owners objected to submission of the damages question on the grounds that (1) there was no evidence that Republic owned an interest in the well or, alternatively, owned only a portion of the interest in the well and (2) the platform owners established as a matter of law that Republic LLC lacks the capacity to recover damages under the PHA. Both of these objections challenge the sufficiency of the evidence regarding capacity. Neither of these objections, however, acknowledges a fact issue on capacity or points to the absence of a jury question or instruction asking for a capacity finding. And the jury heard evidence and argument regarding Republic LLC's capacity to bring this suit on behalf of the working interest owners, and responding to cross-examination evidence and argument urging that any amount that the jury awarded be limited to Republic LP's working interest. For example,

in closing argument, the platform owners noted the absence of the working interest owners from the case. They expressly pointed out to the jury that "Republic Petroleum LLC is the only plaintiff now . . . the plaintiff in this case transferred 100 percent of their interest to another entity when they amended the offshore operating agreement." Later, counsel argued, "Zero percentage remaining. Now—but he's coming to this Court and this jury, twelve of y'all and asking for twelve and a half million dollars on behalf of Petroleum, LLC who transferred all of their interests and has zero interest." The parties tried the issue to the jury.

But the parties did not submit the issue to the jury for an independent finding. The jury questions assumed that Republic LLC had the capacity to recover damages on behalf of the working interest owners. The platform owners neither objected to the absence of a question regarding capacity nor proffered one of their own; accordingly, we hold that the platform owners have waived their challenge to the lack of an independent finding regarding capacity. Based on the jury's verdict, Texas Rule of Civil Procedure 279 requires a court to deem a finding of capacity consistent with the jury's verdict if the evidence is factually sufficient to support the deemed finding. *See* TEX. R. CIV. P. 279; *Bossier City Chrysler Dodge*, 201 S.W.3d at 798 (explaining that if trial court submits question assuming capacity and defendant does not object, defendant is bound by charge on appeal). Because the platform owners challenge the legal and factual sufficiency

14

of the evidence of capacity, however, we consider those challenges in light of the deemed finding. *See* TEX. R. CIV. P. 279 ("A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was requested by complainant.").

## III.    Evidentiary Sufficiency

### A.    *Standard of review*

In reviewing a legal sufficiency challenge to the evidence, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 827. A party bringing a legal sufficiency challenge to a finding on which it did not have the burden of proof must demonstrate that there is no evidence to support the adverse finding. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). We may not sustain a legal sufficiency or no-evidence point unless the record demonstrates that: (1) there is a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810 (quoting Robert W. Calvert, *"No*

*Evidence and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)).  The factfinder is the sole judge of the witnesses' credibility and the weight to give their testimony.  *Id.* at 819.

In reviewing the factual sufficiency of the evidence, we are required to examine all of the evidence, and we will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).  Unlike a legal-sufficiency review, a factual-sufficiency review requires that we review the evidence in a neutral light.  *Id.*; *Nelson v. Najm*, 127 S.W.3d 170, 174 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  The factfinder may choose to "believe one witness and disbelieve others" and "may resolve inconsistencies in the testimony of any witness."  *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see also City of Keller*, 168 S.W.3d at 820–21.

### B.    Analysis

The record contains controverted evidence as to whether Republic LLC had capacity to bring suit on the PHA.  An April 10, 2007 Offshore Operating Agreement (OOA) between Republic and the two other working interest owners, Sierra Pine Resources International and Blue Dolphin Petroleum Company, identifies Republic LLC as the operator and the two other entities as non-operators. The 2007 OOA was in effect when the events giving rise to Republic LLC's

breach-of-contract action occurred. In particular, the OOA confers to Republic LLC, as the operator, the exclusive right to "supervise the handling, conduct, and prosecution of all Claims involving activities or operations." Evidence shows that the other working interest owners authorized Republic LLC to go forward with the suit.

The OOA provides for allocation of expenses and revenue derived from gas production based on the working interest ownership. But the record shows that Republic LLC paid the platform owners' invoices from its own account. Scott Stanford, Republic LLC's corporate representative, testified to $212,614 in expenses incurred by Republic for structural repairs, and he confirmed that Republic LLC paid the expenses. The invoices, remittances, and testimonial evidence support the jury's findings that Republic was entitled to full compensation for the costs in repairs to the platform and a separator as well as other costs paid by Republic LLC.

The PHA itself is also evidence supporting a finding of capacity. The agreement was made "by and between Republic LLC and [the platform owners]." As noted above, neither Republic LLC nor the platform owners provided the written notice or the permission required under the "Successors and Assigns" provision of the PHA. Republic LLC continued to be the only party identified as "producer" under the PHA. Further, the PHA does not refer to or incorporate the

OOA nor does the OOA refer to the PHA; the relationship between Republic LLC and the platform owners under the PHA, therefore, is independent of the relationships among the parties to the OOA. Finally, when the platform owners moved to terminate the PHA, Republic was the entity to which they gave notice.

At trial, the platform owners adduced evidence that Republic LLC had transferred its working interest to Republic LP, which later sold that interest to the non-operating working interest owners. The platform owners also pointed to evidence that Republic LLC had received reimbursement from the other working interest owners for some of the overcharges that it had incurred; the platform owners contend that an award to Republic LLC amounts to a windfall because it has received partial payment for them in any event. The platform owners also introduced evidence of letter agreements between and among various working interest owners regarding allocations of expenses associated with the well. The platform owners, however, are not parties to any of these agreements, including in particular the OOA, which defines Republic LLC's obligations to the non-operating owners. The non-operating owners are not parties to this dispute, and more importantly, are not parties to the PHA. The non-operating owners may assert a claim against Republic LLC for reimbursement for amounts they remitted to Republic LLC under their separate agreements, or for any right to a share of the proceeds of the damages awarded in this case. But the damages the jury awarded

are for the platform owners' breaches of the PHA—that agreement directs that Republic LLC is the party to whom the platform owners are legally obligated, and the jury heard the evidence that it was Republic LLC who incurred these damages when the platform owners overcharged it, and it paid the platform owners with monies from its own account.

Finally, the jury's damages award reflects consideration of this evidence: it awarded damages for costs of repair and for "other costs paid" by Republic LLC that "resulted from the Platform Owners' failure to comply with the PHA," but it declined to award damages for loss of production, which was specifically excepted from the PHA, and for Republic LLC's pipeline connection.

We hold that the record contains legally sufficient evidence of capacity. Viewing the evidence in a neutral light, we further hold that the jury's deemed finding of capacity is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust; therefore, the evidence is factually sufficient to support it.

## IV. Rulings on Motion for Directed Verdict, Motion for JNOV, and Post-Judgment Motions

Having resolved the challenges to Republic LLC's standing and capacity to sue, we apply the resolution of these issues in the context of the parties' post-trial motions that challenge the trial court's modified judgment. The platform owners challenge the trial court's denial of their motion for directed verdict, motion for

19

jnov, motion for new trial, and motion for remittitur. Conversely, Republic LLC contends that the trial court erred in granting the platform owners' motion to modify the judgment.

*Analysis*

The platform owners' motions are premised on their contention that Republic LLC's assignment of its working interest in the well deprives it as a matter of law of any justiciable interest in the PHA and renders it incapable of suing for the PHA's breach. Our holdings that Republic LLC has standing and that legally and factually sufficient evidence supports the jury's deemed finding that Republic LLC has capacity to sue mean that the trial court did not err in denying the motion for jnov, motion for new trial, and motion for remittitur.

For the same reasons, we hold that the trial court erred in granting the platform owners' motion to modify the damages awarded by the judgment. *See In re Brookshire Grocery Co.*, 250 S.W.3d at 73.

## V. Attorney's Fee Award

Because the trial court's reduction of the attorney's fee award in the modified judgment appears to have been based on the premise that Republic LLC lacked capacity to recover the full amount, and we have reinstated the jury's damages award, we vacate the award of attorney's fees and remand the matter to the trial court for its further consideration. Thus, we need not reach Republic

LLC's evidentiary challenge to rebuttal testimony proffered by the platform owner's trial counsel on the ground that he had not been timely designated as an expert witness. *See* TEX. R. APP. P. 47.1.

**Conclusion**

We hold that the trial court properly denied the platform owners' post-trial motions. We further hold that, because legally and factually sufficient evidence support a finding that Republic LLC had the standing and capacity to bring the suit, and to seek full compensation for the damages caused by the platform owners' breach of the parties' contract, the trial court erred in modifying the judgment to reduce the amount of damages awarded by the jury. We therefore reverse the judgment signed April 7, 2014 and remand the cause to the trial court with instructions to reinstate the jury's verdict and to reconsider the award of attorney's fees in light of this disposition.

Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Brown.