Opinion issued July 6, 2021



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00715-CV

_____

**LOUISE JOWDY, Appellant**

**V.**

**HERMELINDA ROSSI, USAA, USAA COUNTY MUTUAL INSURANCE COMPANY, USAA CASUALTY INSURANCE COMPANY, Appellees**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-43825**

---

## MEMORANDUM OPINION

Appellant Louise Jowdy sued appellees Hermelinda Rossi, USAA, USAA County Mutual Insurance Company, and USAA Casualty Insurance Company (collectively Rossi) for damages that she alleged were caused by Rossi's negligence in a 2015 car accident. The jury determined that Rossi was not negligent, and the

trial court rendered a take-nothing judgment on Jowdy's claims. On appeal, Jowdy asserts in two issues that (1) the evidence was factually insufficient to support the jury's finding of no negligence and (2) remand is the proper remedy to address the factual insufficiency of the evidence. Because we conclude that the jury's verdict was not contrary to the overwhelming weight of the evidence, we affirm.

## Background

Jowdy testified that she exited the Sam Houston Tollway on July 2, 2015. As she exited, she stopped near a toll booth in the exit lane, despite the fact that she was in the "toll tag" lane that did not require traffic to stop. Jowdy testified that she stopped because traffic was heavy. She saw a car approaching from behind, and she believed that the driver was looking off to the side. She was rear-ended by the approaching driver, appellee Rossi.

Rossi testified that, on the day of the accident, she and her husband were visiting from San Antonio. It was her first time on the tollway. Rossi agreed with Jowdy's counsel's statement that she "caused [the] wreck 100 percent," stating, "Of course, because I was the one driving." She testified that she "did what she could" to leave enough following space and to break when she realized Jowdy was stopped ahead of her. Rossi contradicted Jowdy's testimony that she was looking to the side before the crash, stating that she was looking straight ahead with both hands on the wheel. She was not speeding, nor was she talking on the phone or otherwise

2

distracted. Rossi testified that she tried to avoid the crash, but she was unable to do so and was herself rear-ended by the person behind her.

Deputy A. Reeves responded to the scene of the accident. In her opinion, Rossi caused the crash and failed to use reasonable care. In her accident report, Deputy Reeves identified Rossi's failure to control her speed as a contributing factor to the crash. Reeves testified that Rossi told her that she tried to stop in time but was unable to do so. Deputy Reeves further testified that, based on her observations and reports from the scene, it appeared that Rossi had tried to stop. There was no indication that Rossi had been distracted. Deputy Reeves also testified that drivers had certain safety obligations, such as controlling their speed, keeping a proper lookout, and leaving reasonable following space, but she acknowledged that accidents can happen even when people are trying to follow the law. Deputy Reeves further testified that accidents were common in that area.

Jowdy also provided evidence regarding spinal injuries that she attributed to the crash. Jowdy was in her seventies at the time of the accident and had a history of degenerative disease in her spine. She had prior back surgeries unrelated to the 2015 accident. Dr. Mayur Kanjia, who did not examine or treat Jowdy until more than three years after the accident, testified that the 2015 accident aggravated Jowdy's pre-existing problems and created some new concerns for her spine. Dr. Kanjia testified that Jowdy would continue to need medical treatment for her spine. He

based his opinion in part on a review of multiple MRIs taken in 2007, 2015, and 2018, and he determined that the scans showed "significant changes" that he believed were due to trauma. However, Kanjia also acknowledged that Jowdy had a degenerative condition that could also have accounted for some or all of the changes reflected in the MRIs. Dr. Kanjia's testimony was contradicted by Dr. Allen Deutsch, an expert for the defense who did not treat Jowdy but reviewed her medical records. Dr. Deutsch opined that the changes demonstrated in the MRIs were primarily caused by Jowdy's degenerative condition.

The jury was instructed on the definition of negligence and other relevant terms:

> "Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.
>
> "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.
>
> "Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

The jury was further instructed:

> Under Texas law, a driver shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering

4

the speed of the vehicles, traffic, and the conditions of the highway, the driver can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.

The jury was then asked, "Did the negligence, if any, of HERMELINDA ROSSI proximately cause the occurrence in question?" Jury answered "No," and the trial court rendered a take-nothing judgment on Jowdy's claims based on this verdict.

## Sufficiency of the Evidence

In two issues, Jowdy argues that the jury's finding of no negligence was against the overwhelming weight of the evidence and, thus, was factually insufficient. She further argues that remanding the case to the trial court is the proper remedy.

## A. Standard of Review

In a factual sufficiency review, we consider all the evidence for and against the challenged finding, and we set aside the finding only if it is so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Frances*, 46 S.W.3d 237, 242 (Tex. 2001); *Guimaraes v. Brann*, 562 S.W.3d 521, 549 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

The factfinder is the sole judge of the credibility of witnesses and the weight to be given their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The factfinder may resolve inconsistencies in witness testimony, regardless

of whether such inconsistencies result from contradictory accounts of multiple witnesses or from internal contradictions in the testimony of a single witness. *Guimaraes*, 562 S.W.3d at 549 (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986), and *Repub. Petrol. LLC v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 433 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)). The factfinder may also choose to believe one witness over another. *City of Keller*, 168 S.W.3d at 819. In conducting our factual sufficiency review, we may not substitute our judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (citing *Ford Motor Co. v. Pool*, 715 S.W.2d 629, 635 (Tex. 1986)).

**B.   Analysis**

Jowdy argues on appeal that the jury finding of no negligence is contrary to the overwhelming weight of the evidence because the proof at trial consisted of "non-conflicting" evidence that Rossi was negligent. Rossi, however, asserts that all elements of Jowdy's negligence claim were in contention at trial and that the jury's denial of Jowdy's negligence claim was supported by the evidence. A negligence cause of action has three elements: (1) a legal duty, (2) breach of that duty, and (3) damages proximately resulting from the breach. *See Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998); *Ramirez v. Colonial Freight Warehouse Co. Inc.*, 434 S.W.3d 244, 249 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

6

Jowdy argues that the evidence conclusively established that Rossi caused the accident. Jowdy points to her own testimony that Rossi rear-ended her, Rossi's own admission that she was responsible for the crash because she was the one driving, and Deputy Reeves's testimony that Rossi caused the crash. Jowdy also presented evidence that Deputy Reeves indicated that Rossi failed to control her speed. Jowdy further argues that Dr. Kanjia's testimony and other medical evidence established that the crash caused her spinal injuries. Jowdy argues that, in light of these facts, the jury's finding of no negligence was contrary to the overwhelming weight of the evidence.

Jowdy's arguments, however, ignore the entirety of the evidence. *See Guimaraes*, 562 S.W.3d at 549 (holding that we must consider all evidence for and against challenged finding and set it aside only if it is so contrary to overwhelming weight of evidence as to be clearly wrong and unjust). The "mere occurrence of a rear-end accident will not present evidence of negligence as a matter of law." *Smith v. Cent. Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex. App.—Houston [14th Dist.] 1989, writ denied); *see Canales v. Womack*, No. 01-07-00222-CV, 2008 WL 2388132, at *2 (Tex. App.—Houston [1st Dist.] June 12, 2008, no pet.) (mem. op.). Rather, "[i]t is the plaintiff's burden to prove specific acts of negligence on the part of the driver and that such negligence was a proximate cause of the accident." *Venegas v. Argueta*, No. 01-20-00285-CV, 2021 WL 1679543, at *3 (Tex. App.—

7

Houston [1st Dist.] Apr. 29, 2021, no pet.) (mem. op.); *see Gomez v. Adame*, 940 S.W.2d 249, 252 (Tex. App.—San Antonio 1997, no writ); *Smith*, 774 S.W.2d at 412.

The evidence was undisputed that Rossi rear-ended Jowdy when Jowdy was stopped in the toll tag lane because of heavy traffic. However, there was conflicting evidence regarding any specific acts of negligence by Rossi that proximately caused the crash. *See In re Ybarra*, No. 04-17-00245-CV, 2017 WL 4655347, at *4 (Tex. App.—San Antonio Oct. 18, 2007, orig. proceeding) (mem. op.) ("The plaintiff in a rear-end accident case must prove specific acts of negligence on the part of the following driver."). Jowdy testified that Rossi appeared to be looking off to the side as she approached Jowdy's stopped vehicle. Rossi, however, testified that she was paying attention, was looking straight ahead, and was not distracted. Rossi testified that she saw Jowdy stop and that she attempted to stop her own vehicle but was unable to do so in time. Deputy Reeves identified Rossi's failure to control her speed as a cause of the accident, but Rossi testified that she was not speeding and that she did what she could to leave adequate space between her vehicle and Jowdy's. The car behind Rossi likewise failed to stop in time and rear-ended Rossi.

Thus, there was "evidence that the driver exercised some care," so it was left for the jury to "determine[] whether a reasonably prudent driver would have acted in the same way." *Canales*, 2008 WL 2388132, at *2; *Mata v. Coastal Agric. Supply,*

8

*Inc.*, No. 01-17-00509-CV, 2018 WL 3150869, at *6 (Tex. App.—Houston [1st Dist.] June 28, 2018, no pet.); *see Douglas v. Aguilar*, 599 S.W.3d 105, 109 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("[W]here there is evidence that the driver exercised some care, the jury determines whether a reasonably prudent driver would have acted in the same way."). The jury was the sole judge of the credibility of the witnesses and was entitled to resolve inconsistencies in witness testimony in determining whether Rossi exercised the ordinary care a reasonably prudent person would exercise under the same circumstances. *See City of Keller*, 168 S.W.3d at 819; *Guimaraes*, 562 S.W.3d at 549; *Venegas*, 2021 WL 1679543, at *3; *see also McGalliard*, 722 S.W.2d at 697 ("A jury may believe or disbelieve the testimony of a witness, in whole or in part, and may resolve any inconsistencies in a witness's testimony."). We may not substitute our judgment for that of the factfinder. *Jackson*, 116 S.W.3d at 761.

Furthermore, Rossi's statement acknowledging that she was responsible for the crash because she was driving is not conclusive evidence that she breached the duty of ordinary care. *See Ybarra*, 2017 WL 4655347, at *4 (holding that defendant's "testimony and pre-trial statements that he was responsible for the accident do not constitute an admission of negligence" and distinguishing that defendant's admission that he rear-ended plaintiff's vehicle was not admission that he was driving in negligent manner); *see also Campbell v. Perez*, No. 02–14–00248–CV,

9

2015 WL 1020842 at *3 (Tex. App.—Fort Worth 2015, no pet.) (mem. op.) (holding defendant's admission he was at fault was not admission of negligence); *Benavente v. Granger*, 312 S.W.3d 745, 749–50 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding defendant's testimony that he ran into plaintiff's car did not establish negligence). Rossi's admission that she was responsible for the crash because she was driving is an admission that she struck Jowdy's vehicle, but it is not an admission of negligence. *See Canales*, 2008 WL 2388132, at *2; *Douglas*, 599 S.W.3d at 109. Again, this is a determination left to the jury. *Ybarra*, 2017 WL 4655347, at *4 ("In a rear-end collision, 'standards of ordinary care cannot be fixed with any degree of certainty but must be left in large measure to the trier of the facts.' The jury is not only the judge of the facts and circumstances proven, but may also draw reasonable inferences and deductions from the evidence adduced before it.").

In light of all the evidence, Jowdy has not shown that the jury's verdict is against the great weight and preponderance of the evidence. *See Dow Chem.*, 46 S.W.3d at 242. Accordingly, we hold that the trial court did not err in rendering a take-nothing judgment on Jowdy's claims based on the jury's verdict.

We overrule Jowdy's issues on appeal.[1]

---

[1] Rossi also argues in her brief that we lack jurisdiction over this appeal because Jowdy's notice of appeal was untimely. Jowdy's notice of appeal was filed within the 15-day grace period provided by Texas Rule of Appellate Procedure 26.3. A motion for extension of time is necessarily implied when an appellant, acting in good faith, files a notice of appeal beyond the time allowed by Rule 26.1, but within

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Goodman, Hightower, and Rivas-Molloy.

---

the 15-day grace period provided by Rule 26.3, for filing a motion for extension of time. *See Verburgt v. Dorner*, 959 S.W.2d 615, 617–18 (Tex. 1997) (construing predecessor to Rule 26). Jowdy subsequently filed a motion to extend time, providing a good-faith explanation for the delay in filing her notice of appeal. We grant the motion to extend time and conclude that her notice of appeal was timely filed.